USDC SCAN INDEX SHEET











MOORE

IMPERIAL CITY OF

RCM

3:97-CV-00623

*1*

*CMP.*

1  Everett L. Bobbitt, SBN 116908
   Bradley M. Fields, SBN 174974
2  LAW OFFICES OF EVERETT L. BOBBITT
   8388 Vickers St.
3  San Diego, CA 92111
   (619) 467-1199
4

5  Attorneys for Plaintiffs
   AVIS MOORE, GARY COX, JOE BIELMA, and RAY VALENZUELA

6

7

8            UNITED STATES DISTRICT COURT

9          SOUTHERN DISTRICT OF CALIFORNIA

10 AVIS MOORE, GARY COX, JOE BIELMA,  )  Case No. '97 CV 0623 B   (LSP)
11 and RAY VALENZUELA,                )
12                                    )  VERIFIED COMPLAINT FOR:
         Plaintiffs,                  )
13                                    )  42 U.S.C. 1983 - U.S. CONST. RIGHT OF
14       v.                           )  PRIVACY; NEGLIGENT SUPERVISION;
                                      )  INTENTIONAL INFLICTION OF
15 CITY OF IMPERIAL, BALDEV JOSAN,    )  EMOTIONAL DISTRESS; NEGLIGENT
   PAUL INGRAM, PATRICIA BURK, TOM    )  INFLICTION OF EMOTIONAL DISTRESS;
16 MAZZEROLL, and RANDY HINES         )  NEGLIGENCE; VIOLATION OF CAL.
                                      )  CONST. RIGHT OF PRIVACY;  SLANDER;
17       Defendants.                  )  42 U.S.C. 1983 -VIOLATION OF
18                                    )  FOURTEENTH AMENDMENT TO U.S.
                                      )  CONSTITUTION; VIOLATION OF PENAL
19 .                                  )  CODE SECTION 832.7; VIOLATION OF
20                                    )  EVIDENCE CODE SECTION 1043
                                      )
21                                    )  DEMAND FOR JURY TRIAL
22 _____   )

23       Plaintiffs allege:

24                                    I

25                      **GENERAL ALLEGATIONS**

26    1. This action arises under 42 U.S.C. Section 1983, First, Fourth, and Fourteenth

27 Amendments to the Constitution of the United States as well as under State law.  The jurisdiction

28

Page 1

of this Court over the claims arising under 42 U.S.C. Section 1983 is founded on 28 U.S.C. sections 1331 and 1343(3).   The jurisdiction of the Court over the claims arising under State law is founded on the doctrine of pendent jurisdiction.

2. Venue for this complaint is founded on 28 U.S.C. section 1391(b).

3. Plaintiff AVIS MOORE ("MOORE") is, and at all material times mentioned herein was, a resident of the County of Imperial, State of California.  MOORE is currently employed with the City of Imperial's Police Department as the Chief of Police.

4. Plaintiff GARY COX ("COX") is, and at all material times mentioned herein was, a resident of the County of Imperial, State of California.  COX is currently employed with the City of Imperial's Police Department as a Captain.

5. Plaintiff JOE BIELMA ("BIELMA") is, and at all material times mentioned herein was, a resident of the County of Imperial, State of California.  BIELMA is currently employed with the City of Imperial's Police Department as a Sergeant.

6. Plaintiff RAY VALENZUELA ("VALENZUELA") is, and at all material times mentioned herein was, a resident of the County of Imperial, State of California.  VALENZUELA is currently employed with the City of Imperial's Police Department as a Police Officer.

7. Defendant CITY OF IMPERIAL ("CITY") is, and at all material times mentioned herein was, a city in the State of California.  CITY was the employer of Defendants BALDEV JOSAN, the former City Manager and PAUL INGRAM, the former Acting Chief of Police during material times mentioned herein.   Defendants PATRICIA BURK, TOM MAZEROLL, and RANDY HINES were members of CITY'S City Council during all material times mentioned herein.

8. Defendant BALDEV JOSAN ("JOSAN") was, during material times mentioned herein, an employee of the CITY, formerly employed as CITY'S Manager.

9. Defendant PAUL INGRAM ("INGRAM") was, during material times mentioned herein, an employee of the CITY, formerly employed as CITY'S Acting Chief of Police.

10. Defendant PATRICIA BURK ("BURK") was, during all material times mentioned herein, a member of CITY'S City Council.  BURK was, during all material times mentioned herein, CITY'S mayor.

11. Defendant TOM MAZZEROLL ("MAZZEROLL") was, during all material times mentioned herein, a member of CITY'S City Council.  MAZZEROLL was, during all material times mentioned herein, a member of the Personnel Commission of CITY'S Council.

12. Defendant RANDY HINES ("HINES") was, during all material times mentioned herein, a member of CITY'S City Council.  HINES was, during all material times mentioned herein, a member of the Personnel Commission of CITY'S Council.

13. Prior to the filing of this Complaint, in a letter dated November 26, 1996, Plaintiffs MOORE, COX, BIELMA, and VALENZUELA (hereinafter sometimes collectively referred to as "PLAINTIFFS")  filed a claim with CITY pursuant to California Government Code Section 910 et seq.  This claim was received by CITY on or about December 9, 1996.  A true and correct copy of PLAINTIFFS' claim against CITY and referencing CITY, JOSAN, INGRAM BURKE, MAZEROLL, and HINES (hereinafter sometimes collectively referred to as "DEFENDANTS") is attached hereto as Exhibit "A" and is incorporated herein by this reference as though fully set forth.  On or about December 29, 1996, PLAINTIFFS each received a notice from CITY advising each of them that the CITY had rejected their claim.  A true and correct copy of CITY'S letter rejecting MOORE'S claim is attached as Exhibit "B" and is incorporated by this reference as

though fully set forth.  A true and correct copy of CITY'S letter rejecting COX'S claim is attached as Exhibit "C" and is incorporated by this reference as though fully set forth.  A true and correct copy of CITY'S letter rejecting BIELMA'S claim is attached as Exhibit "D" and is incorporated by this reference as though fully set forth.  A true and correct copy of CITY'S letter rejecting VALENZUELA'S claim is attached as Exhibit "E" and is incorporated by this reference as though fully set forth.

14. MOORE began to work for the CITY"S Police Department on January 29, 1982. Since October 17, 1984, MOORE has worked as the Police Chief.  MOORE has enjoyed a good reputation, both generally and in respect to her profession as a Police Officer with CITY.

15. COX began to work for the CITY"S Police Department on September 27, 1983. Since October 30, 1995, COX has worked as a Captain.  COX has enjoyed a good reputation, both generally and in respect to his profession as a Police Officer with CITY.

16. BIELMA began to work for the CITY"S Police Department on December 4, 1989. Since July 8, 1995, BIELMA has worked as a Sergeant.  BIELMA has enjoyed a good reputation, both generally and in respect to his profession as a Police Officer with CITY.

17. VALENZUELA began to work for the CITY"S Police Department on October 26, 1993.  Throughout this time period, VALENZUELA has worked as a Police Officer. VALENZUELA has enjoyed a good reputation, both generally and in respect to his profession as a Police Officer with CITY.

18. In February and March, 1996, PLAINTIFFS, and each of them, were put on administrative leave pending internal affairs investigations and a management audit of CITY'S Police Department.

19. By letter dated May 2, 1996, JOSAN indicated that he intended to terminate MOORE from her job as Chief of Police with CITY and offered her an opportunity to attend a pre-disciplinary hearing to respond to the charges against her. The allegations were based on a number of alleged inappropriate actions taken by MOORE, as well as the allegation that MOORE may have violated California law during her employment with CITY.

20. On May 28, 1996, MOORE attended a pre-disciplinary hearing with JOSAN. On her behalf, MOORE'S attorney made a number of procedural objections which indicated that both the investigation of MOORE, as well as the proposed discipline, violated CITY'S Police Department Policy Manual. Specifically, CITY violated 1.055, 1.060, 1.075, 1.080, 1.085, 1.090, 1.095, 1.105, 1.110, and 1.125 of CITY'S Police Department Policy Manual. MOORE'S attorney also stated that the proposed discipline violated CITY'S Council Resolution 90-11, which provides that that the Chief of Police serves at the pleasure of CITY'S City Council, not the City Manager. MOORE'S attorney also denied the allegations made against MOORE.

21. By letter dated May 31, 1996, JOSAN served the Notice to Terminate MOORE. Pursuant to the Imperial City Code, MOORE'S termination required CITY'S Council confirmation. Confirmation of JOSAN'S intent to terminate MOORE was scheduled for June 11, 1996. By letter dated June 5, 1996, from MOORE'S attorney, CITY'S Council was made aware of the violation of CITY'S Council Resolution and that the allegations in the Notice of Termination were unconstitutionally vague.

22. On June 11, 1996, CITY'S Council met for the purpose of confirming JOSAN'S attempt to terminate MOORE. CITY'S Council voted to overturn JOSAN'S decision to terminate MOORE and returned MOORE to work as Police Chief.

23. By letter dated May 7, 1996, JOSAN indicated that he intended to demote COX from Captain to the position of Senior Officer in his employment with CITY and offered him an opportunity to attend a pre-disciplinary hearing to respond to the charges against him. The allegations were based on a number of alleged inappropriate actions taken by COX, as well as the allegation that COX may have violated California law during his employment with CITY.

24. On May 28, 1996, COX attended a pre-disciplinary hearing with JOSAN. On behalf of COX, his attorney made a number of procedural objections which indicated that both the investigation of COX, as well as the proposed discipline, violated CITY'S Police Department Policy Manual. Specifically, CITY violated 1.055, 1.060, 1.075, 1.080, 1.085, 1.090, 1.095, 1.105, 1.110, and 1.125 of CITY'S Police Department Policy Manual. Many of these violations resulted from the fact that JOSAN had inserted himself into the disciplinary process in place of the Chief of Police. COX'S attorney also denied the allegations made against COX.

25. By letter dated June 6, 1996, JOSAN served COX'S Notice of Demotion. The Demotion took effect immediately. Pursuant to CITY'S Personnel Policies, COX was entitled to a post-disciplinary evidentiary hearing on front of the Personnel Committee of the CITY'S Council. Although COX availed himself of the right to a post-evidentiary hearing, such a hearing never took place.

26. By letter dated June 6, 1996, from COX'S attorney, the Personnel Committee of the CITY'S Council was notified of the previously referenced violations of CITY'S Police Department Manual.

27. By letter dated June 12, 1996, from COX'S attorney, the Personnel Committee of CITY'S Council was asked to send the pending discipline to the Chief of Police to comply with CITY'S Police Department Manual.

28. On June 28, 1996, the Personnel Committee of CITY'S Council "promoted" COX from Senior Officer to the position of Sergeant without holding a hearing.

29. By letter dated July 11, 1996, to CITY'S City Council, COX'S attorney complained that CITY'S City Council refused to set a hearing date for COX. A similar letter was sent from COX'S attorney to CITY'S City Attorney on August 2, 1996.

30. On August 14 , 1996, the CITY'S City Council voted to reinstate COX to his former position of Captain with CITY'S Police Department.

31. By letter dated May 2, 1996, JOSAN indicated that he intended to terminate BIELMA from his employment with CITY and offered him an opportunity to attend a pre-disciplinary hearing to respond to the charges against him. The allegations were based on a number of alleged inappropriate actions taken by BIELMA, as well as the allegation that BIELMA may have violated California law during his employment with CITY.

32. On May 28, 1996, BIELMA attended a pre-disciplinary hearing with JOSAN. On behalf of BIELMA, his attorney made a number of procedural objections which indicated that both the investigation of BIELMA, as well as the proposed discipline, violated CITY'S Police Department Policy Manual. Specifically, CITY violated 1.055, 1.060, 1.075, 1.080, 1.085, 1.090, 1.095, 1.105, 1.110, and 1.125 of CITY'S Police Department Policy Manual.. Many of these violations resulted from the fact that JOSAN had inserted himself into the disciplinary process in place of the Chief of Police. BIELMA'S attorney also denied the allegations made against BIELMA.

33. By letter dated June 6, 1996, JOSAN served BIELMA'S Notice of Termination. The termination took effect immediately. Pursuant to CITY'S Personnel Policies, BIELMA was entitled to a post-disciplinary evidentiary hearing on front of the Personnel Committee of the

CITY'S Council.  Although BIELMA availed himself of the right to a post-evidentiary hearing, such a hearing never took place.

34. By letter dated June 6, 1996, from BIELMA'S attorney, the Personnel Committee of the CITY'S Council was notified of the previously referenced violations of CITY'S Police Department Manual.

35. By letter dated June 6, 1996, from BIELMA'S attorney, the Personnel Committee of the CITY'S Council was notified of the previously referenced violations of CITY'S Police Department Manual.

36. By letter dated June 12, 1996, from BIELMA'S attorney, the Personnel Committee of CITY'S Council was asked to send the pending discipline to the Chief of Police to comply with CITY'S Police Department Manual.

37. On June 28, 1996, the Personnel Committee of CITY'S Council confirmed the termination of BIELMA without holding a hearing.

38. By letter dated July 11, 1996, to CITY'S Council, BIELMA'S attorney complained that CITY'S Council refused to set a hearing date for BIELMA.  A similar letter was sent from BIELMA'S attorney to CITY'S Attorney on August 2, 1996.

39. On August 14 , 1996, the CITY'S Council voted to reinstate BIELMA to his former position of Sergeant with CITY'S Police Department.

40. By letter dated May 6, 1996, JOSAN indicated that he intended to terminate VALENZUELA from his employment with CITY and offered him an opportunity to attend a pre-disciplinary hearing to respond to the charges against him.  The allegations were based on a number of alleged inappropriate actions taken by VALENZUELA, as well as the allegation that VALENZUELA may have violated California law during his employment with CITY.

41. On May 28, 1996, VALENZUELA attended a pre-disciplinary hearing with JOSAN. On behalf of VALENZUELA, his attorney made a number of procedural objections which indicated that both the investigation of VALENZUELA, as well as the proposed discipline, violated CITY'S Police Department Policy Manual. Specifically, CITY violated 1.055, 1.060, 1.075, 1.080, 1.085, 1.090, 1.095, 1.105, 1.110, and 1.125 of CITY'S Police Department Policy Manual. Many of these violations resulted from the fact that JOSAN had inserted himself into the disciplinary process in place of the Chief of Police. VALENZUELA'S attorney also denied the allegations made against VALENZUELA.

42. By letter dated June 6, 1996, JOSAN served VALENZUELA'S Notice of Termination. The termination took effect immediately. Pursuant to CITY'S Personnel Policies, VALENZUELA was entitled to a post-disciplinary evidentiary hearing on front of the Personnel Committee of the CITY'S Council. Although VALENZUELA availed himself of the right to a post-evidentiary hearing, such a hearing never took place.

43. By letter dated June 6, 1996, from VALENZUELA'S attorney, the Personnel Committee of the Imperial City Council was notified of the previously referenced violations of CITY'S Police Department Manual.

44. By letter dated June 12, 1996, from VALENZUELA'S attorney, the Personnel Committee of CITY'S Council was asked to send the pending discipline to the Chief of Police to comply with CITY'S Police Department Manual.

45. On June 28, 1996, the Personnel Committee of CITY'S Council overturned the termination of VALENZUELA and imposed a three-day suspension without holding a hearing.

46. By letter dated July 11, 1996, to CITY'S Council, VALENZUELA'S attorney complained that CITY'S Council refused to set a hearing date for VALENZUELA. A similar letter was sent from VALENZUELA'S attorney to CITY'S Attorney on August 2, 1996.

47. On August 14 , 1996, CITY'S Council voted to reverse the three-day suspension and to reimburse VALENZUELA for the three-day suspension served.

48. Throughout the disciplinary appeals process, DEFENDANTS, and each of them made statements to the press and to others. These statements were of a factual nature, which were oftentimes untrue, as well and opinions of DEFENDANTS. Some statements which appeared in the press are as follows:

49. February 15, 1996, article in <u>Imperial Valley Press</u> detailing the placing of MOORE and COX on administrative leave. JOSAN said this was done as a result of allegations of mismanagement and procedural violations within the Police Department.

50. February 20, 1996, article in <u>Imperial Valley Press</u> detailing the hiring of INGRAM by CITY. JOSAN stated that an auditor had been hired to conduct what could become a prolonged internal investigation.

51. March 18, 1996, article in <u>Imperial Valley Press</u> detailing hiring of auditor to conduct internal investigation. INGRAM stated that the state Department of Justice started a criminal investigation of the Police Department and that a law firm started an internal affairs investigation.

52. March 20, 1996, article in <u>Imperial Valley Press</u> detailing the placing of BIELMA and VALENZUELA on administrative leave. JOSAN said this resulted because BIELMA and VALENZUELA copied records from CITY'S Police Department.

53. March 22, 1996, article in <u>Imperial Valley Press</u> detailing the allegations against and investigations regarding PLAINTIFFS, and each of them.  BURKE stated that the pending situation was "terrible".

54. March 29, 1996, article in <u>Imperial Valley Press</u> detailing the allegations against and investigations regarding PLAINTIFFS, and each of them.  JOSAN stated that MOORE and COX were on administrative leave for allegations of mismanagement and mishandling of evidence.  Article states that CITY'S Police Department submitted report to the District Attorney's Office which could result in criminal charges against PLAINTIFFS.

55. April 1, 1996, article in <u>Imperial Valley Weekly</u> detailing MAZZEROLL'S intention to attempt to bring MOORE and COX back to work and the nature of the outstanding allegations.  MAZZEROLL stated that future events may warrant the dismissal of MOORE and COX.

56. April 5, 1996, article in <u>Imperial Valley Press</u> stating the details of the criminal charges filed against PLAINTIFFS.  INGRAM stated that the case against PLAINTIFFS had merit.  The article stated that the District Attorney's Office declined to issue criminal complaints because the cases had no merit.

57. April 8, 1996, article in <u>Imperial Valley Press</u> stating that JOSAN said that PLAINTIFFS, and each of them, would remain on administrative leave pending the outcome of the internal affairs investigations.  BURK added that she hoped to clear up the situation in the near future.  The article also referenced the outstanding criminal allegations against PLAINTIFFS.

58. April 11, 1996, article in <u>Imperial Valley Weekly</u> detailing District Attorney's Office decision not to file criminal complaints against PLAINTIFFS.  Specifically, the report

from CITY'S Police Department was said to be issued against VALENZUELA for

fraudulent possession of a completed check, embezzlement, and profiteering from

entrusted funds without authorization.  The report also named MOORE and COX as

accessories.  JOSAN stated that administrative process will take a couple of weeks.

MOORE'S case will depend upon audit conducted by the CITY.  According to JOSAN,

COX'S case would hinge on the management audit and the internal affairs process.

According to JOSAN, BIELMA'S and VALENZUELA'S case would hinge on the

internal affairs process.

59. April 18, 1996, article in Imperial Valley Press BURK'S apparent resignation from

CITY'S Council resulting from an attempt by others on the Imperial City Council to

reinstate PLAINTIFFS.  BURK indicated that she did not feel such reinstatement was

appropriate.

60. April 19, 1996, article in Imperial Valley Press referencing the possible return by

BURK to CITY'S City Council.  The article included statements by BURK,

MAZZEROLL, and HINES regarding the outstanding allegations against, and

investigations regarding, PLAINTIFFS, and each of them.

61. April 25, 1996, article in Imperial Valley Weekly detailing decision by BURK to stay

on CITY'S City Council.  BURK added that it would be a disaster to return MOORE and

COX to work.

62. May 2, 1996, article in Imperial Valley Weekly detailing decision of BURK to stay on

the Imperial City Council and allegations against PLAINTIFFS, and each of them.

MAZZEROLL added that no decision on discipline could be made by the Imperial City

Council because JOSAN had not yet finalized his recommendations.

63. May 3, 1996, article in <u>Imperial Valley Press</u> detailing the fact that JOSAN declared

the administrative review process complete and that he was beginning his review.

MAZZEROLL indicated that he felt that the process was nearing an end. HINES

indicated that he believed the process to be fair. The outstanding allegations were

referenced.

64. May 29, 1996, article in <u>Imperial Valley Press</u> in which MAZZEROLL detailed

PLAINTIFFS status in the administrative review process.

65. June 10, 1996, article in <u>Imperial Valley Press</u> in which COX'S demotion and return to

work were referenced. In addition, MOORE'S pending hearing in front of CITY'S

Council was referenced. The outstanding allegations against PLAINTIFFS were also

mentioned.

66. June 11, 1996, article in <u>Imperial Valley Press</u> in which the referencing outstanding

allegations against PLAINTIFF. The pending vote of CITY'S Council regarding MOORE

was also referenced in the article.

67. June 12, 1996, article in <u>Imperial Valley Press</u> in which MOORE'S return to work was

documented. BURK stated that there were very serious allegations which needed to be

taken care of immediately.

68. June 13, 1996, article in <u>Imperial Valley Weekly</u> detailing return of MOORE to work.

The article also detailed the allegations and pending discipline of COX, BIELMA, and

VALENZUELA. JOSAN added that he concluded that CITY'S Police Department was

not run properly under MOORE and that she did not have the ability to correct the

wrongdoing.

69. June 27, 1996, article in <u>Imperial Valley Press</u> detailing the pending discipline against COX, BIELMA, and VALENZUELA.  The article referenced the upcoming hearings for COX, BIELMA, and VALENZUELA before the Personnel Commission of CITY'S Council.

70. June 28, 1996, article in <u>Imperial Valley Press</u> detailing the decision of the Personnel Committee of CITY'S City Council to promote COX from Senior Officer to Sergeant, reverse VALENZUELA'S termination and impose a three day suspension, and confirm BIELMA'S termination. The article also referenced the allegations against PLAINTIFFS, and each of them.

71. July 4, 1996, article in <u>Imperial Valley Weekly</u> detailing the decision of the Personnel Committee of CITY'S City Council to promote COX from Senior Officer to Sergeant, reverse VALENZUELA'S termination and impose a three day suspension, and confirm BIELMA'S termination.  The article also referenced the allegations against PLAINTIFFS, and each of them.

72. July 18, 1996, article in <u>Imperial Valley Weekly</u> detailing pending appeals of COX, BIELMA, and VALENZUELA.  The article detailed the decision by CITY'S City Council to appoint a hearing officer to hear the appeals of COX, BIELMA, and VALENZUELA. The article also referenced the allegations against PLAINTIFFS, and each of them.

73. July 25, 1996, article in <u>Imperial Valley Weekly</u> detailing decision to appoint a hearing officer to hear the appeals of COX, BIELMA, and VALENZUELA.  The article also referenced the allegations against PLAINTIFFS, and each of them.

74. August 22, 1996, article in <u>Imperial Valley Press</u> detailing decision to appoint new members to CITY'S Council positions.  BURK added that the Police Department has various problems that need to be addressed.

## II

## FIRST CAUSE OF ACTION

### (42 U.S.C. Section 1983 - Violation of U.S. Constitution Right of Privacy)

### (Against All Defendants)

75. PLAINTIFFS reallege paragraphs one (1) through seventy-four (74) incorporating them herein by this reference.

76. Defendants CITY, JOSAN, INGRAM, BURK, and MAZZEROLL and each of them, have acted under State law to deprive PLAINTIFFS of certain constitutional rights, including, but not limited to the right of privacy.

77. PLAINTIFFS have a constitutional right to privacy to avoid disclosing matters of a personal nature, which was violated when CITY, JOSAN, INGRAM, BURK, and MAZZEROLL, and each of them, made comments to the press and others regarding the status of the investigations of PLAINTIFFS, as well as comments regarding their respective abilities and performances as Police Officers.

78. WHEREFORE, PLAINTIFFS pray for relief as hereinafter set forth.

## III

## SECOND CAUSE OF ACTION

### (Negligent Supervision)

### (Against All Defendants except INGRAM)

79. PLAINTIFFS reallege paragraphs one (1) though seventy-eight (78) incorporating them herein by this reference.

80. Defendants BURK, MAZZEROLL, and HINES had the duty to instruct, supervise, discipline, and control Defendants JOSAN and INGRAM. Defendant JOSAN had the additional duty to instruct, supervise, discipline, and control Defendant INGRAM. Defendants BURK, MAZZEROLL, HINES, and JOSAN had the power to prevent or aid in the prevention of the commission of such wrongs, and could have done so by reasonable diligence, but neglected or refused to do so, thus resulting in the constitutional violations and defamation as set forth in this complaint.

81. Defendants BURK, MAZZEROLL, HINES, and JOSAN, through their acts or omissions, have acted negligently in the supervision of their respective subordinates in that BURK, MAZZEROLL, HINES, and JOSAN should have known that their respective subordinates would violate PLAINTIFFS' right of privacy, violate PLAINTIFFS' due process protections, and defame PLAINTIFFS.

82. WHEREFORE, PLAINTIFFS pray for relief as hereinafter set forth.

## IV

## THIRD CAUSE OF ACTION

### (Intentional Infliction of Emotional Distress)

### (Against All DEFENDANTS)

83. PLAINTIFFS reallege paragraphs one (1) though eighty-two (82) incorporating them herein by this reference.

84. DEFENDANTS, and each of them, have committed conduct or omissions which were extreme and outrageous and abuse of authority and position of DEFENDANTS. Said conduct

was intended to cause severe emotional distress, or was done in conscious disregard of the probability of causing such distress. In particular, DEFENDANTS engaged in an intentional and harassing course of conduct. This conduct included:

    a.    Making comments to the press and others regarding the status of the investigations of PLAINTIFFS.

    b.    Making comments to the press and others regarding the respective abilities and performances as Police Officers of PLAINTIFFS.

    c.    Denying PLAINTIFFS a right to a fair hearing as DEFENDANTS continually violated the due process and civil service procedures available to PLAINTIFFS.

85. The foregoing did in fact cause PLAINTIFFS to suffer emotional distress. As a proximate result of said conduct, PLAINTIFFS have suffered and will continue to suffer pain, humiliation, and emotional distress in an amount according to proof.

86. DEFENDANTS herein committed the acts alleged herein maliciously, fraudulently, and oppressively with the wrongful intention of injuring PLAINTIFFS and formed an improper and evil motive amounting to malice, and in conscious disregard of PLAINTIFFS' rights. PLAINTIFFS are thus entitled to recover punitive damages from DEFENDANTS in an amount according to proof.

87. WHEREFORE, PLAINTIFFS pray for relief as hereinafter set forth.

**V**

**FOURTH CAUSE OF ACTION**

**(Negligent Infliction of Emotional Distress)**

**(Against All DEFENDANTS)**

88. PLAINTIFFS reallege paragraphs one (1) through eighty-seven (87) incorporating them herein by reference.

89. At all times herein mentioned, DEFENDANTS and each of them, had a duty to exercise due care toward PLAINTIFFS.

90. DEFENDANTS breached the duty of care as stated in this complaint knowing that it would cause PLAINTIFFS severe emotional distress.

91. The conduct set forth in this Complaint was extreme and outrageous and an abuse of the authority and position of DEFENDANTS and each of them.

92. WHEREFORE, PLAINITIFFS pray for relief as hereinafter set forth.

## VI

## FIFTH CAUSE OF ACTION

## (Negligence)

## (Against All DEFENDANTS)

93. PLAINTIFFS reallege paragraphs one (1) through ninety-two (92) incorporating them herein by reference.

94. DEFENDANTS, and each of them, owed a duty to PLAINTIFFS, not to act in a manner that cause PLAINTIFFS to have their right to privacy violated. DEFENDANTS, and each of them, acted in a careless and negligent manner when they supervised and dealt in any manner with PLAINTIFFS.

95. A further direct legal result of the negligence of the DEFENDANTS, and each of them, PLAINTIFFS' earning capacity has been or will be greatly impaired both in the past and present, in an amount according to proof.

96. WHEREFORE, PLAINTIFFS pray for relief as hereinafter set forth.

**VII**

**SIXTH CAUSE OF ACTION**

**(Violation of California Right of Privacy - California Constitution Art. I, Section 1)**

**(Against All DEFENDANTS)**

97. PLAINTIFFS reallege paragraphs one (1) through ninety-six (96) incorporating them herein by this reference.

98. DEFENDANTS, and each of them, have violated California Constitution, Article I, Section 1, which states that the "inalienable rights" of all "people" includes the "right of privacy."

99. WHEREFORE, PLAINTIFFS pray for relief as hereinafter set forth.

**VIII**

**SEVENTH CAUSE OF ACTION**

**(Slander – California Civil Code Section 46)**

**(Against All DEFENDANTS)**

100. PLAINTIFFS reallege paragraphs one (1) through ninety-nine (99) incorporating them herein by this reference.

101. During the above-described appeals process which resulted in the return to work of PLAINTIFFS, and each of them, DEFENDANTS, and each of them made the above-described accusations that PLAINTIFFS committed crimes in the course of their duties as CITY'S Police Officers, violated various Policies and Procedures of CITY'S Police Department, and performed improperly in their jobs with CITY'S Police Department. These accusations were both generally directed at PLAINTIFFS and specifically made regarding PLAINTIFFS.

102. DEFENDANTS accusations were made, on various occasions, to reporters from the Imperial Valley Press. DEFENDANTS made these accusations knowing, or having reason to

know, that they would be heard and published to many others, all of whom could not and are not

known to PLAINTIFFS.

103. The accusations are false as they pertain to PLAINITFFS because PLAINTIFFS did

not commit any crimes in the course of their duties as CITY Police Officers, did not violate

various Policies and Procedures of CITY'S Police Department, and performed properly in their

jobs with CITY'S Police Department.

104. As further evidence that the statements made by DEFENDANTS, and each of them,

were false, PLAINTIFFS were not charged with any crimes, PLANTIFFS were eventually cleared

of the allegations of violations of Policies and Procedures with their work with CITY'S Police

Department.

105. The accusations are slanderous per se in that they impute to PLAINTIFFS, and each

of them, a general disqualification in their professions as Police Officers.  The statements also are

slanderous per se in that they charge PLAINTIFFS with crimes.

106. These words carry a defamatory meaning because they clearly indicate that

PLAINTIFFS acted improperly in their jobs as Police Officers.  These words also carry a

defamatory meaning in that they clearly charge PLAINTIFFS with crimes.

107. These words were understood by the hearers in a way in a way that defamed

PLAINTIFFS because they understood the accusations as those which indicated that

PLANTIFFS acted improperly in their jobs as Police Officers and that PLAINTIFFS had

committed crimes.

108. As a proximate result of the above-described publication, PLAINTIFFS, and each of

them, have suffered loss of their reputation, shame, mortification, and injury to their feelings, all

to their damage in an amount to be established by proof at trial.

109. The above words were spoken by DEFENDANTS, and each of them, with malice and oppression in that the statements were intended to cause injury to PLAINTIFFS' careers and reputations as well as to accuse them of committing crimes. These statements were made with a willful and conscious disregard of PLAINTIFFS' rights because DEFENDANTS were aware of the probable dangerous consequences of their conduct and willfully and deliberately failed to avoid those consequences.

110. WHEREFORE, PLAINTIFFS pray for relief as hereinafter set forth.

IX

**EIGHTH CAUSE OF ACTION**

**(42 U.S.C. 1983 - Violation of Fourteenth Amendment to U.S. Constitution)**

**(AGAINST ALL DEFENDANTS)**

111. PLAINTIFFS reallege paragraphs one (1) through one hundred ten (110) incorporating them herein by this reference.

112. DEFENDANTS, and each of them, in the course of investigating and recommending discipline for PLAINTIFFS, and each of them, continually violated the due process protections afforded under the Fourteenth Amendment to the United States Constitution resulting from violations of civil service procedures afforded to PLAINTIFFS, and each of them, under California law, CITY'S Municipal Ordinances, and CITY'S Police Department Policy Manual.

113. INGRAM and JOSAN violated the Fourteenth Amendment to the United States Constitution by conducting an investigation in violation of California law, CITY'S Municipal Ordinances, and CITY'S Police Department Policy Manual. INGRAM and JOSAN were informed of these violations and took no corrective action.

114. MAZZEROLL, HINES, and BURK violated such procedures and laws by not reinstating PLAINTIFFS, and each of them, as soon as they learned of the violations of California law, CITY'S Municipal Ordinances, and CITY'S Police Department Policy Manual.

115. DEFENDANTS, and each of them, have damaged PLAINTIFFS' standing and associations in the community because their respective good names, reputations, and integrity have been damaged such that their freedom to pursue other employment opportunities has been foreclosed.

116. Through their actions, DEFENDANTS, and each of them, violated the Fourteenth Amendment to the United States Constitution, which provides that "any State [shall not] deprive any person of life, liberty, or property, without due process of law."

117. WHEREFORE, PLAINTIFFS pray for relief as hereinafter set forth.

## X

### NINTH CAUSE OF ACTION

### (Violation of California Penal Code 832.7)

### (AGAINST ALL DEFENDANTS)

118. PLAINTIFFS reallege paragraphs one (1) through one hundred eighteen (118) incorporating them herein by this reference.

119. Through their actions, DEFENDANTS, and each of them have violated California Penal Code Section 832.7, which limits the release of confidential information regarding Peace Officers in the context of a civil or criminal proceeding.

120. WHEREFORE, PLAINTIFFS pray for relief as hereinafter set forth.

## XI

### TENTH CAUSE OF ACTION

**(Violation of California Evidence Code Section 1043)**

**(AGAINST ALL DEFENDANTS)**

121. PLAINTIFFS reallege paragraphs one (1) through one hundred twenty (120) incorporating them herein by this reference.

122. Through their actions, DEFENDANTS, and each of them, violated California Evidence Code Section 1043, which limits discovery or disclosure of Peace Officer Personnel Records.

WHEREFORE, PLAINTIFFS respectfully pray by way of relief that:

1.     The Court award PLAINTIFFS damages, including prejudgment interests;

2.     The Court award punitive damages from JOSAN, INGRAM, BURK, MAZZEROLL, and HINES;

3.     The Court award reasonable attorney fees to PLAINTIFFS pursuant to 42 U.S.C. Section 1988;

4.     The Court award cost of this action; and

5.     The Court grant such other relief as may be just and proper.

PLAINTIFFS demand a jury trial in this case.

DATED: *April 1, 1997*               LAW OFFICES OF EVERETT L. BOBBITT

by _____
Everett L. Bobbitt
Bradley M. Fields
Attorneys for Plaintiffs
AVIS MOORE, GARY COX,
JOE BIELMA, and RAY VALENZUELA

**VERIFICATION**

I, RAY VALENZUELA, am a Plaintiff in the above-entitled action. I have read the foregoing VERIFIED COMPLAINT FOR DAMAGES and know the contents thereof. I certify that the same is true of my own knowledge, except as to those matters which are therein stated upon my knowledge and belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on March 25 1997, at   5:00 P.M.   , *IMPERIAL* California.

RAY VALENZUELA

## VERIFICATION

I, JOE BIELMA, am a Plaintiff in the above-entitled action. I have read the foregoing VERIFIED COMPLAINT FOR DAMAGES and know the contents thereof. I certify that the same is true of my own knowledge, except as to those matters which are therein stated upon my knowledge and belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on March 28 1997, at  Imperial , California.

_____
JOE BIELMA

1

2

**VERIFICATION**

3

4      I, GARY COX, am a Plaintiff in the above-entitled action.  I have read the foregoing

5   VERIFIED COMPLAINT FOR DAMAGES and know the contents thereof.  I certify that the

6   same is true of my own knowledge, except as to those matters which are therein stated upon my

7   knowledge and belief, and as to those matters, I believe them to be true.

8

9      I declare under penalty of perjury under the laws of the State of California that the

10  foregoing is true and correct.

11      Executed on March 28 1997, at IMPERIAL , California.

12

13

14                                                                    _Gary Cox_
                                                                    GARY COX

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## VERIFICATION

I, AVIS MOORE, am a Plaintiff in the above-entitled action.  I have read the foregoing VERIFIED COMPLAINT FOR DAMAGES and know the contents thereof.  I certify that the same is true of my own knowledge, except as to those matters which are therein stated upon my knowledge and belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on March 28 1997, at _Imperial_ , California.

AVIS MOORE

AO 440 (Rev 5/85) Summons in a Civil Action

# United States District Court
## SOUTHERN DISTRICT OF CALIFORNIA

AVIS MOORE, GARY COX, JOE BIELMA
and RAY VALENZUELA

        Plaintiffs,

        **vs**

CITY OF IMPERIAL, BALDEV JOSAN,
PAUL INGRAM, PATRICIA BURK,
TOM MAZZEROLL, and RANDY HINES

        Defendants.

**SUMMONS IN A CIVIL ACTION**

Case No.

TO: (Name and Address of Defendant)

    YOU ARE HEREBY SUMMONED and required to file with the Clerk of this Court and serve upon PLAINTIFF'S ATTORNEY

LAW OFFICES OF EVERETT L. BOBBITT
EVERETT L. BOBBITT (116908)
BRADLEY M. FIELDS (174974)
8388 VICKERS STREET
SAN DIEGO, CA  92111
(619) 467-1199

    An answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

      Roberta Westdal

CLERK

DATE

ROI-ANN BRESSI

BY DEPUTY CLERK

AO 440 (Rev 5/85) Summons in a Civil Action

(Rev. 07/89)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I (a) PLAINTIFFS

AVIS MOORE, GARY COX, JOE BIELMA, and
RAY VALENZUELA

**DEFENDANTS**

CITY OF IMPERIAL, BALDEV JOSAN,
PAUL INGRAM, PATRICIA BURK,
TOM MAZZEROLL, and RANDY HINES

FILED
APR - 8 1997
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  SAN DIEGO
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT  IMPERIAL
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
LAW OFFICES OF EVERETT L. BOBBITT
EVERETT L. BOBBITT (116908)
BRADLEY M. FIELDS (174974)
8388 VICKERS ST., SAN DIEGO, CA, 92111
(619) 467-1199

ATTORNEYS (IF KNOWN)

'97 CV 0623 B (LSP)

## II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government
Plaintiff

☐ 2 U.S. Government
Defendant

☒ 3 Federal Question
(U.S. Government Not a Party)

☐ 4 Diversity
(Indicate Citizenship of
Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.
DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

VIOLATIONS OF CIVIL RIGHTS UNDER 42 UNITED STATES CODE SECTION
1983 AND RELATED STATE LAW CLAIMS.

## V. NATURE OF SUIT (PLACE AN x IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— Med Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury— Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Habeas Corpus: | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☒ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Other | | | |

## VI. ORIGIN (PLACE AN x IN ONE BOX ONLY)

☒ 1 Original
Proceeding

☐ 2 Removed from
State Court

☐ 3 Remanded from
Appellate Court

☐ 4 Reinstated or
Reopened

☐ 5 Transferred from
another district
(specify)

☐ 6 Multidistrict
Litigation

☐ 7 Appeal to District
Judge from
Magistrate
Judgment

## VII. REQUESTED IN COMPLAINT:

CHECK IF THIS IS A CLASS ACTION
☐ UNDER F.R.C.P. 23

DEMAND $

Check YES only if demanded in complaint:
JURY DEMAND: ☒ YES ☐ NO

## VIII. RELATED CASE(S) (See instructions):
IF ANY

JUDGE _____ DOCKET NUMBER _____

DATE 4/8/97

SIGNATURE OF ATTORNEY OF RECORD

UNITED STATES DISTRICT COURT

#29322
$150